J. B. NEWMAN, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY et al., Appellees.

RAILROADS:   Accidents at Crossings—Evidence—Inapplicability of Speed Ordinance.   A city ordinance which limits the speed of railway trains under given conditions is properly excluded, in the absence of any evidence that the ordinance was violated.

Headnote 1:   33 Cyc. p. 1084.

Headnote 1:   24 L. R. A. (N. S.) 493; 22 R. C. L. 1045.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

JANUARY 19, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Action against the defendant for the death of Celia A. Carpenter, alleged to have been caused by negligence.   From a judgment in favor of the defendant, plaintiff appeals.—*Affirmed.*

*Edwards, Longley, Ransier & Harris,* for appellant.

*J. G. Gamble, R. L. Read,* and *A. B. Howland,* for appellee.

ALBERT, J.—On the 23d of January, 1923, Celia Carpenter was killed at a public crossing in the city of Waterloo by one of appellee's passenger trains.   With others, she was riding in an automobile, and in an attempt to cross the tracks of the appellee, the car was struck, resulting in the death of Mrs. Carpenter.

One of the grounds of negligence alleged is that the train was moving at an excessive rate of speed.   The city of Waterloo has an ordinance limiting the rate of speed of trains within the city limits to 8 miles per hour.   In the trial of the case, appellant offered this ordinance in evidence.   It was objected to, and the objection sustained.   This ruling by the court is the only error assigned.   The case went to a jury, and the jury found for the appellee.

One of the objections made to the offer of this ordinance was that it had never been approved by the board of railroad

commissioners, as required by Chapter 152, Acts of the Thirty-ninth General Assembly. It is further objected that the ordinance was immaterial; and appellant urges that the clause in the aforesaid act providing that the ordinance shall be submitted to the board of railroad commissioners is unconstitutional and void, in that it confers legislative power on an administrative commission; but before we reach this question, we are confronted by a serious question,—that of the materiality and relevancy of this ordinance, if it be assumed to be valid.

The only witness in the case who testifies as to the speed of the train at the time the accident occurred is one Burgess, who states that he was riding on the train between the back end of the tender and the first car behind the tender. He says:

"I have not ridden on trains very much, but I have ridden some in automobiles with speedometers, and have observed the speed that the speedometer would register. I am able to state somewhere near the rate of speed at which a train is going when I am on it. * * * I did not pay much attention to the speed of the train going over the viaduct down to the time it stopped, but it was going at a good rate of speed. I couldn't tell whether the engine was working steam, or whether it was coasting.

"Q. I will ask you how the train was going that night as to speed, with reference to the times it had gone other times when you had ridden it,—that same train? A. Well, it was going little more rate of speed. Q. Was the train running, at the time it got to this crossing that night, more rapidly or slower, or at the same rate of speed that it was running after it left the viaduct, if you remember? Give your best impression. A. I couldn't say."

This train was traveling in a southeasterly direction; and it is conceded, or at least satisfactorily established, that it ran 725 feet southeast of the crossing where the accident occurred, before it came to a stop. It is urged by appellant that the distance the train ran east of the crossing is a circumstance which adds to the foregoing testimony from Burgess. While there would ordinarily be some force in this suggestion, it seems to us hardly applicable here, because the evidence shows that, at the time the accident occurred, it was rainy and misty and

foggy. It was not sleeting, but the rain was freezing as it fell, and the street, as described by one witness, was covered with a coat of ice. This being the condition, it would naturally follow that the rails of appellee's track would also be covered with ice. This would tend to make them slippery, and in part account for the distance the train ran before it stopped. On the other hand, there is no evidence whatever in the case tending to show within what distance a train of this kind could be brought to a stop. It will be noted in the above testimony, which is all there is in the record on the subject, that there is no direct evidence as to the speed of this train at the time of the accident, and no witness testifies in words to its speed per hour. To say that the train was going at a ''good'' rate of speed, which is the most that the testimony shows, is wholly speculative, and is a conclusion reached without any facts on which to base the same. We had occasion to review a somewhat similar set of facts in the case of *Parr v. Union Elec. Co.,* 150 Iowa 70, in which the sole witness with reference to the speed of appellee's street car said: ''The motor was going at full speed.'' We there held that this was insufficient to sustain a charge of excessive speed.

In order to make this city ordinance admissible in evidence, the appellant had the burden of showing that the train, at the time the accident occurred, was traveling at a speed exceeding 8 miles per hour. Until this was done by appellant, the ordinance was wholly irrelevant and immaterial.

We have set out the record in the case so far as this question is concerned, and reach the conclusion that the appellant did not establish that the train was traveling at a speed in excess of 8 miles per hour. This being true, it follows that the court was right in sustaining the objection to the ordinance. This ruling being sustained, it becomes unnecessary to discuss the constitutional question involved.—*Affirmed.*

DE GRAFF, C. J., and EVANS, STEVENS, FAVILLE, VERMILION, and MORLING, JJ., concur.